IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BARTON S. REED                                                                              PLAINTIFF

V.                                          NO. 15-5266

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Barton S. Reed, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income benefits (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.     Procedural Background:**

Plaintiff protectively filed his applications for DIB and SSI on October 9, 2012, alleging disability since April 11, 2012, due to kidney removal, pain in his cervical lumbar spine, pain from hip to cervical spine, and chronic weakness. (Doc. 16, pp. 161-162, 206, 210, 227). An administrative hearing was held on January 30, 2014, at which Plaintiff appeared with counsel, and he and his uncle testified. (Doc. 16, pp. 41-81).

By written decision dated May 29, 2014, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – renal

1

cell carcinoma, kidney removal-post/operative, pain from hip to cervical spine, and degenerative changes at L5-S1. (Doc. 16, p. 28). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Doc. 16, p. 29). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform the full range of light work as defined in 20 C.F.R. §§404.1567(b) and 416.967(b). With the help of a vocational expert (VE), the ALJ determined Plaintiff was capable of performing his past relevant work as a carton forming machine operator. (Doc. 16, p. 35). Alternatively, the ALJ determined there were other jobs Plaintiff would be able to perform, such as machine tender and inspector or tester. (Doc. 16, p. 36).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which considered additional information and denied the request on August 21, 2015. (Doc. 16, pp. 5-10).

**II.    Evidence Presented:**

Plaintiff was born in 1975. (Doc. 16, p. 206). On April 11, 2012, urologist Dr. Richard McWhorter performed a right laparoscopic nephrectomy on Plaintiff, removing his cancerous right kidney. (Doc. 16, p. 293). Plaintiff was discharged on April 13, 2012, and his discharge diagnosis was six cm enhancing lesion of the right kidney. (Doc. 16, p. 324). Secondary diagnoses were listed as: recent pancreatitis; chronic alcohol abuse; and chronic tobacco use. (Doc. 16, p. 324). In a follow-up visit with Dr. McWhorter, Plaintiff was reported as healing well and having no complaints. (Doc. 16, pp. 281-282). On April 23, 2012, Plaintiff presented himself to FirstCare Mission & Crossover (FirstCare), complaining

of an abscess in his right abdomen, in the kidney area. (Doc. 16, p. 312). Plaintiff was then sent to Dr. McWhorter's office that same day, and Dr. McWhorter reported that his steri-strips came off of his incision and the wound had re-opened. (Doc. 15, p. 284). At that visit, Plaintiff was reported as shaking, and stated that he had to quit drinking due to his pancreatitis, and had been unable to sleep. (Doc. 16, p. 284). Plaintiff was assessed with renal cell carcinoma and disruption of the wound. (Doc. 16, p. 285).

On May 15, 2012, Plaintiff returned to Dr. McWhorter's office, and was seen by Kristy Walker, PA-C. (Doc. 16, p. 287). Plaintiff's incision was reported as "healed" and he was ready to go back to work. (Doc. 16, p. 287). Plaintiff stated that he was "overall doing well" and had tried to add back activity, such as weed eating. (Doc. 16, p. 287). He also reported doing well regarding his pancreatitis. (Doc. 16, p. 287). Plaintiff was advised to gradually start back to work to see what his tolerance was, and to ask for help with any lifting. (Doc. 16, p. 289).

On May 15, 2012, Plaintiff saw Dr. Mark A. Bonner, his treating physician. (Doc. 16, p. 310). At that time, Plaintiff reported experiencing abdominal tenderness in his right upper quadrant. (Doc. 16, p. 311).

On August 3, 2012, Plaintiff presented to Dr. Bonner for medication refills. (Doc. 16, p. 308). Dr. Bonner reported that Plaintiff's anxiety was stable – he was taking Lorazepam; his hypertension was stable – he was taking Lisinopril; and his incision was tender. Dr. Bonner reported that Plaintiff had back pain related to renal surgery that he controlled with hydrocodone. (Doc. 16, p. 308). Dr. Bonner also noted that Plaintiff smoked two packs of cigarettes per day. (Doc. 16, p. 308). A CT of Plaintiff's abdomen/pelvis revealed status post

right nephrectomy with no tumor recurrence within the nephrectomy, and no evidence of metastatic disease. (Doc. 16, p. 296).

Plaintiff saw Dr. McWhorter on October 18, 2012, complaining of pain around the surgical site when he was working. (Doc. 16, p. 290). Dr. McWhorter reported that Plaintiff was "generally satisfied with his life," and did not feel severely depressed. (Doc. 16, p. 280). Dr. McWhorter reported Plaintiff was doing great. (Doc. 16, p. 292).

On October 23, 2012, Plaintiff saw Dr. Bonner, seeking refills for Lisinopril, Lorazapam, and Hydrocodone. (Doc. 16, p. 305). Dr. Bonner assessed Plaintiff with anxiety, recurrent, and hypertension NOS, sub-optimal control. (Doc. 16, p. 306).

On January 14, 2013, Plaintiff was seen by Julia A. Blanchard, APN, at FirstCare. (Doc. 16, p. 408). Plaintiff requested a refill for his Lisinopril, and indicated that taking one daily seemed to control his blood pressure. (Doc. 16, p. 408). Ms. Blanchard reported that Plaintiff's abdominal discomfort was stable, was aggravated by heavy meals, and that Plaintiff was concerned about returning pancreatitis. (Doc. 16, p. 408). Plaintiff also sought a refill for his Lorazapam, stating that he was happy with this medication, and was doing well with his anxiety. Plaintiff also asked to change his pain medication to hydrocodone for his intermittent back pain. (Doc. 16, p. 408). Plaintiff was assessed with abdominal pain, acute; anxiety, stable; HTN, unspec., stable; and lumbar pain, chronic. (Doc. 16, p. 409).

On January 22, 2013, Plaintiff saw Dr. Chad Paschall for follow up of his abdominal pain. (Doc. 16, p. 450). Plaintiff was continuing to have some pain in his left upper quadrant area. Dr. Paschall reported that Plaintiff was drinking alcohol "about one time a week," which made it worse. (Doc. 16, p. 450). Dr. Paschall thought it would be reasonable to consider doing an EGD to make sure there was no peptic ulcer disease or other upper GI

4

findings that would explain his symptoms. Dr. Paschall also advised Plaintiff to avoid alcohol completely and to cease smoking. (Doc. 16, p. 450).

On or about February 6, 2013, non-examining consultant, Dr. Bill F. Payne, completed a Physical RFC Assessment, concluding that Plaintiff would be able to perform light work with no limitations. (Doc. 16, p. 93).

On April 18, 2013, Plaintiff returned to Dr. McWhorter for follow-up lab work for his renal cancer. Plaintiff complained of gradual onset of intermittent episodes of mild right lower and right mid back pain, radiating to the right abdomen. (Doc. 16, p. 426). Dr. McWhorter assessed Plaintiff with renal cell carcinoma; urinary frequency; urinary frequency more than twice at night (nocturia), and renal neoplasm. (Doc. 16, p. 430).

On or about April 15, 2013, non-examining consultant, Dr. Valeria Malak, completed a Physical RFC Assessment, finding that Plaintiff would be able to perform light work with no limitations. (Doc. 16, p. 103).

On June 12, 2013, Plaintiff presented himself to Dr. Bonner with gastroenteritis and social security disability papers for the doctor to complete. (Doc. 16, p. 459). Dr. Bonner assessed Plaintiff with gastritis, renal cell carcinoma, and anxiety state. (Doc. 16, p. 460). Dr. Bonner also completed a Medical Source Statement (Physical), a Physical RFC Assessment-Short form, and a Medical Source Statement (Mental) on that same date. (Doc. 16, pp. 458, 461, 463). In the Medical Source Statement (Physical), Dr. Bonner found Plaintiff suffered from significant limitations in several areas, and reported that the limitations were supported by Plaintiff's abdominal pain/leg weakness, anxiety, and poor concentration. (Doc. 16, pp. 417-418). In his Medical Source Statement (Mental), which consisted of a check-box form, Dr. Bonner checked all of the boxes (23), which indicated that Plaintiff had no useful ability

5

to function on a sustained basis in all areas, which is defined as an eight hour work day for five days in a full work week. (Doc. 16, p. 461).

On July 18, 2013, Dr. Bonner assessed Plaintiff with disc degeneration; lumbar. (Doc. 16, p. 458). Also on July 18, 2013, Plaintiff saw Dr. McWhorter for evaluation of gross hematuria. (Doc. 16, p. 423). On July 24, 2013, Dr. McWhorter performed a meatotomy[1] and cystoscopy[2] on Plaintiff at Washington Regional Medical Center (WRMC). (Doc. 16, p. 446).

On September 13, 2013, Plaintiff saw William S. Piechal, D.O., a pain management specialist, at Healing Arts Medical Center, complaining of chronic benign intractable pain syndrome secondary to lumbosacral degenerative disc disease with chronic low back pain. (Doc. 16, p. 463). Plaintiff reported to Dr. Piechal that he had been having intermittent low back pain for approximately 15 years, and that x-rays taken within the previous year apparently revealed multilevel degenerative disc disease. (Doc. 16, p. 463). Dr. Piechal also noted that Plaintiff smoked two packs of cigarettes per day. Dr. Piechal assessed Plaintiff with chronic benign intractable pain syndrome secondary to lumbosacral degenerative disc disease, with low back pain, and lumbosacral enthesiopathy secondary to lumbosacral degenerative disc disease. (Doc. 16, p. 464). Dr. Piechal advised Plaintiff that he would reevaluate him in one month and update his lumbosacral status with a MRI, which would be done once his finances became better clarified. (Doc. 16, p. 464).

On February 7, 2014, Plaintiff presented himself to Dr. Ryan L. Kaplan for neurological consultation, to address tremors, memory loss, and poor balance. (Doc. 16, p. 500). Dr. Kaplan noticed that Plaintiff had high frequency/low amplitude tremor, mostly in

---

[1] Meatonomy – An incision made to enlarge a meatus, e.g., of the urethra or ureter. Stedman's Medical Dictionary, 1165 (28th ed. 2006)
[2] Cystoscopy – The inspection of the interior of the bladder by means of a cystoscope. Id. at 486.

6

his hands when they were outstretched. (Doc. 16, p. 500). Dr. Kaplan reported that Plaintiff had possible essential tremors along with memory loss and worsening balance, and that he would need a brain MRI to rule out a variety of neurological disorders. (Doc. 16, p. 501). Dr. Kaplan also reported that Plaintiff was at a very high risk for cardiovascular disease/stroke, given his extensive history of smoking. (Doc. 16, p. 501). A MRI of Plaintiff's brain was performed on February 14, 2014, and was unremarkable. (Doc. 16, p. 503). On March 5, 2014, Dr. Kaplan followed up with the MRI, and assessed Plaintiff with essential tremor, memory loss, and ataxia.[3] (Doc. 16, p. 491). Dr. Kaplan found that Plaintiff's tremors were progressing, and started him on a low dose of propranolol, 10mg three times a day. (Doc. 16, p. 499). On April 4, 2014, Dr. Kaplan reported that Plaintiff was doing much better on the propranolol, that his tremor was doing better, and that they would discuss him weaning down on Ativan with Dr. Bonner. (Doc. 16, p. 498). Dr. Kaplan also found that Plaintiff's memory loss was "doing a bit better," and that he had been able to basically quit alcohol. (Doc. 16, p. 498). He also reported that Plaintiff's poor balance had improved and "may have been alcohol related." (Doc. 16, p. 498). Dr. Kaplan also noted that Plaintiff was working on weaning down on his smoking.[4]

On May 29, 2014, Plaintiff saw Greg Smith, PA-C, at FirstCare, for follow-up on his blood pressure, anxiety and back pain. (Doc. 16, p. 510). His blood pressure symptoms were reported as being mild and well controlled. (Doc. 16 ,p. 510). Mr. Smith also reported that with respect to Plaintiff's anxiety, there was improvement, and Plaintiff reported that

---

[3] Ataxia – An inability to coordinate muscle activity during voluntary movement; most often results from disorders of the cerebellum or the posterior columns of the spinal cord; may involve the limbs, head, or trunk. Id. at 172.
[4] The Court notes that although Plaintiff saw Dr. Kaplan prior to the ALJ's decision, these records were not before the ALJ, but instead, were considered by the Appeals Council, who found that the information did not provide a basis for changing the ALJ's decision.

7

functioning was not difficult at all. Regarding Plaintiff's back pain, Plaintiff sought a refill of the hydrocodone prescription. (Doc. 16, p. 510). The assessment given was: unspecified essential hypertension – refilled medication; GERD - continue current treatment regimen; anxiety state unspec. – refilled medication and take as prescribed; and back pain – refilled medication and take as prescribed. (Doc. 16, p. 512).

Subsequent to the date of the ALJ's decision, on June 26, 2014, upon Dr. Bonner's referral, Plaintiff went to a urologist, Dr. Chad Brekelbaum, for a second opinion about his urologic problems. At that time, Plaintiff reported he drank alcohol in moderation and smoked 1.5 packs of cigarettes per day. (Doc. 16, p. 18). It was reported that Plaintiff had a baseline resting tremor and his eyes appeared bloodshot. He also had some slurring of speech, and had alcohol in his system. (Doc. 16, p. 19). The impression given was: history of renal cell carcinoma – recent CT demonstrated no evidence of recurrence; extremely elevated blood pressure uncontrolled by current blood pressure medications; lower urinary tract symptoms of unclear etiology – possible BPH, no evidence of hematuria and no suggestion of urinary tract infection; alcoholism – still drinking; and tobacco abuse. (Doc. 16, p. 19). Dr. Brekelbaum recommended that Plaintiff continue to follow up with Dr. McWhorter for his history of renal cell cancer, and that Plaintiff quit smoking and drinking. (Doc. 16, p. 19).

Also subsequent to the date of the ALJ's decision, by letter dated July 29, 2014, to Dr. Bonner, orthopedic surgeon, Dr. Carl M. Kendrick noted that Plaintiff could bend over, but it hurt when he got to about 10 inches from the floor. Plaintiff was able to get up on the examining table in a sitting position "rather easily." (Doc. 16, p. 15). Plaintiff had good sensation, good reflexes, a marked clonus in his right ankle and vibratory sense was intact, but had a positive Babinski. (Doc. 16, p. 15). Dr. Kendrick noted that Plaintiff had normal

8

alignment of his low back, his hips and sacroiliac joint were normal, his pelvis was normal, he had significant narrowing of the L4 and L5 disc space, and he had some facet changes at 4 and 5 that were "rather marked." (Doc. 16, p. 15). Plaintiff had spinal stenosis at that level, but that did not explain the upper motor neuron findings that were in his left foot. Plaintiff's neck alignment was okay, and he had a degenerative disk disease at 6-7, which was basically collapsed disk space with no instability on flexion and extension. There were some foraminal spurs on Plaintiff's oblique, and Dr. Kendrick saw no evidence of any metastatic disease. Dr. Kendrick noted that Plaintiff saw a neurologist "some time ago, but did not have the trouble with the trembling at that time." (Doc. 16, pp. 15-16). He believed he needed some scans and evaluation by someone that was able to "delve further in the upper motor neuron aspect of the disease." (Doc. 16, p. 16).

### III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents

the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §§404.1520, 416.920  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC. See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §404.1520, §416.920, abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§404.1520, 416.920.

**IV.   Discussion:**

Plaintiff raises the following issues in this matter: 1) The ALJ erred in failing to fully and fairly develop the record; and 2) The ALJ erred in his RFC determination.

   **A.   Credibility:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. (Doc. 16, p. 31). The ALJ discussed Plaintiff's daily activities, noting that he could take care of his personal needs, fix meals, drive, shop, and handle his finances. (Doc. 16, p. 30). He also addressed all of Plaintiff's medical records that were before him, the fact that medication controlled many of Plaintiff's impairments, and that Plaintiff continued to smoke up to two packs per day and drank alcohol, against the recommendations of various physicians. (Doc. 16, pp. 29-34). "Failure to follow a prescribed course of remedial treatment without good

11

reason is grounds for denying an application for benefits." Brown v. Barnhart, 390 F.3d 535, 540-541 (8th Cir. 2004)(citations omitted).

Based upon the foregoing, the Court believes there is substantial evidence to support the ALJ's credibility analysis.

### B.    RFC Determination:

Plaintiff argues that in concluding he could perform the exertional and non-exertional requirements of a full range of light level of work on a sustained basis, the ALJ relied on a RFC assessment completed by a non-treating medical consultant, which indicated Plaintiff's ability to perform within the light exertional level. Plaintiff argues that the ALJ rejected the opinion evidence of his treating physician, Dr. Bonner, giving it little weight, but never identified any conflicts between the treating source opinion evidence and other evidence, merely stating that it is not supported by objective findings.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Gilliam's v. Barnhart, 3 93 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth

specifically a claimant's limitations and to determine how those limitations affect his RFC." Id. "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *11 (N.D. Iowa Mar. 31, 2015)(quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

With respect to the weight given to the opinions of treating physicians, "[a] claimant's treating physician's opinion will generally be given controlling weight, but it must be supported by medically acceptable clinical and diagnostic techniques, and must be consistent with other substantial evidence in the record." Andrews v. Colvin, No. 14-3012, 2015 WL 4032122 at *3 (8th Cir. July 2, 2015)(citing Cline v. Colvin, 771 F.3d 1098, 1102 (8th Cir. 2014). "A treating physician's opinion may be discounted or entirely disregarded 'where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" Id. "In either case-whether granting a treating physician's opinion substantial or little weight-the Commissioner or the ALJ must give good reasons for the weight apportioned." Id.

In this case, the ALJ stated that he gave little weight to Dr. Bonner's assessments because the severity of restrictions given was not supported by the objective medical evidence, including Dr. Bonner's own records. The Court agrees. In fact, on the same day that Dr. Bonner completed his assessments, he also conducted a physical examination of Plaintiff, who presented with gastroenteritis. (Doc. 16, p. 459). Dr. Bonner reported that the severity of Plaintiff's gastroenteritis was mild. (Doc. 16, p. 459). In reviewing Plaintiff's symptoms, the only one he reported as positive was diarrhea. In addition, upon physical

13

examination, Dr. Bonner indicated that Plaintiff's eyes, neck, lymph detail, respiratory, cardiovascular, abdomen, skin, musculoskeletal, neurological, and orientation areas were all "normal." (Doc. 16, pp. 455-456). He assessed Plaintiff with gastritis, renal cell carcinoma, and anxiety state. (Doc. 16, p. 456). Further, Dr. Bonner's previous records did not indicate Plaintiff suffered from such severe impairments to warrant the extreme restrictions he placed on Plaintiff in his assessments. Therefore, there is substantial evidence in the record to support the ALJ's finding that Dr. Bonner's opinion was not supported by the objective medical evidence, including Dr. Bonner's own records. "An ALJ may 'discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005)(quoting Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000)). The ALJ had before him the Physical RFC Assessments completed by non-examining consultants, Dr. Payne and Dr. Malak, who, in February and April of 2013, respectively, both found Plaintiff would be able to perform light work without limitations.

Based upon the foregoing, the Court believes there is substantial evidence to support the ALJ's RFC determination and the weight he gave to the opinions of the physicians.

### C.     Failure to Fully Develop the Record:

Plaintiff argues that the ALJ erred in failing to fully and fairly develop the record, including, in part, denying Plaintiff's written petition for urology, mental, orthopaedic, and general physical consultative examinations. "Plaintiff bears a heavy burden in showing the record has been inadequately developed." Chapman v. Colvin, No. 4:15-CV-00522-JLH-JJV, 2016 WL 2585652 at *4 (E.D. Ark. Apr. 11, 2016). The ALJ has a duty to fully and fairly

14

develop the record.  See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary.  See 20 C.F.R. § 404.1512.  The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case.  Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010).  However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record.  See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").  "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment.  They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination."  Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir. 1989).  "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis."  Mans v. Colvin, No. 13-CV-2103, 2014 WL 3689797 at *4 (W.D. Ark., July 24, 2014)(quoting Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994).

In this case, the record before the ALJ contained medical records from Plaintiff's treating physician - Dr. Bonner, a urologist - Dr. McWhorter, a gastroenterologist – Dr. Paschall, and a pain management specialist - Dr. Piechal. There were clearly sufficient records before the ALJ from which he could make a determination regarding Plaintiff's ability to function in the workplace.

As noted by Defendant, a consultative urological examination was not necessary, because he saw Dr. McWhorter, a urologist, in July of 2013, and did not have any further urological complaints prior to the ALJ's decision dated May 29, 2014.

Nor was a physical or orthopaedic examination necessary. On January 14, 2013, Plaintiff reported that he continued to have intermittent back pain, and wanted to change his medicine for pain to hydrocodone, because he stated it seemed to last longer. (Doc. 16, p. 408). On September 13, 2013, Dr. Piechal noted that Plaintiff reported he had intermittent low back pain for the previous 15 years. (Doc. 16, p. 463). Dr. Piechal wanted to re-evaluate Plaintiff in one month and update with a MRI. There are no records indicating that Plaintiff later saw Dr. Piechal. On May 29, 2014, the same day as the ALJ's decision, Plaintiff saw Greg Smith, PA-C, at FirstCare. Plaintiff's pain medication was refilled, and he was advised to take it as prescribed. (Doc. 16, p. 512). The Court believes the evidence reflects only intermittent complaints of back pain during the relevant time period, which seemed to be controlled with medication.

With respect to Plaintiff's request for a mental evaluation, the Court first notes that Plaintiff did not initially allege disability due to any mental impairment, which is significant. Dunahoo v. Apfel, 241 (F.3d 1033, 1039 (8th Cir. 2001)("The fact that she did not allege depression in her application for disability benefits is significant even if the evidence of depression was later developed."). In addition, when Plaintiff was diagnosed with anxiety during the relevant time period, it was often referred to as "stable," or that he was "doing great" and "generally satisfied with his life," or that he was "happy with" his anxiety medication, and "doing well." (Doc. 16, pp. 290, 308, 408-409, 510). Accordingly, there was

16

substantial evidence before the ALJ for him to make a determination regarding Plaintiff's mental state.

Regarding Plaintiff's tremors and request for a neurological consultation, on February 7, 2014, Plaintiff saw Dr. Ryan L. Kaplan for a neurological consultation. (Doc. 16, p. 494). A MRI of the brain was unremarkable (Doc. 16, p. 503), and after being prescribed propranolol, on April 4, 2014, Dr. Ryan reported Plaintiff's tremors were "much better." (Doc. 16, p. 498). As stated earlier, the ALJ did not have Dr. Kaplan's records before him. However, the Appeals Council reviewed those records and found that the information did not provide a basis for changing the ALJ's decision. (Doc. 16, p. 6). The Court agrees, and believes there was sufficient evidence before the ALJ for him to make a determination regarding Plaintiff's physical and mental capabilities. The Court also believes that the outcome would not have changed had the ALJ had before him the records of Dr. Kaplan.

With respect to the records that were obtained after the ALJ's decision from Dr. Brekelbaum and Dr. Kendrick, the Appeals Council looked at said records and advised that they were about a later time and did not affect the decision about whether Plaintiff was disabled beginning on or before May 29, 2014. (Doc. 16, p. 6). "[T]he Appeals Council must consider evidence submitted with a request for review 'if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision.'" Box v. Shalala, 52 F.3d 168, 171 (8th Cir. 1995)(quoting Williams v. Sullivan, 905 F.2ds 214, 216-17 (8th Cir. 1990). "An implicit requirement is that the new evidence pertain to the time period for which benefits are sought, and that it not concern later acquired disabilities or subsequent deterioration of a previously non-disabling condition." Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir. 1997). In addition, "[a]dditional evidence showing a deterioration

in a claimant's condition significantly after the date of the Commissioner's final decision is not a material basis for remand, although it may be grounds for a new application for benefits." Id.

The Court believes the information submitted after the ALJ's decision is not a material basis for remand. Plaintiff may apply again and submit the new information, if he so desires.

### D.     Hypothetical Question to the VE:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical questions the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).  Accordingly, the Court finds that the VE's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff would be able to perform his past relevant work as a carton forming machine operator, or alternatively, Plaintiff would be able to perform other jobs, such as machine tender and inspector or tester.  Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### V.     Conclusion:

Accordingly, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to**

18

**appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

IT IS SO ORDERED this 21st day of October, 2016.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE